IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


AILEENE TAYLOR,

          **Plaintiff,**

vs.                                                Civ. No.   12-552 JCH/GBW

COUNTY OF CHAVES; RHODA
COAKLEY, individually and in her
capacity as CHAVES COUNTY CLERK;
DOUGLAS J. SHAW, individually and in
his capacity as CHAVES COUNTY
DEPUTY CLERK,

          **Defendants.**


## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint On the Basis of Qualified Immunity and Other Grounds* [Doc. 30]. The Court has considered the motion, response, and reply, as well as the attached evidence and other documents in the record the parties have incorporated by reference, and concludes that the motion should be granted in part and denied in part.

## PROCEDURAL BACKGROUND

      On May 21, 2012, Plaintiff filed her Original Complaint in this Court. On July 13, 2012, Defendants moved to dismiss the Original Complaint on the basis of qualified immunity, and for failure to state a claim against the County. In response, on August 3, 2012, Taylor filed the Amended Complaint. *See* Doc. 22. Defendants subsequently withdrew their initial motion to dismiss, and on August 17, 2012, Defendants filed a motion to dismiss the Amended Complaint.

In a *Memorandum Opinion and Order* entered March 27, 2013 [Doc. 27], this Court found that the motion to dismiss should be granted but also gave Taylor leave to file a Second Amended Complaint to correct the deficiencies of the Amended Complaint. On April 8, 2013, Taylor filed her Second Amended Complaint [Doc. 28]. In response, Defendants filed the motion to dismiss that is presently before the Court.

## FACTUAL BACKGROUND

In her Second Amended Complaint, Taylor makes the following allegations.

Taylor was employed by Defendant Chaves County from August 24, 2001 until her forced retirement from the position of Deputy Clerk in the Chaves County Clerk's Office on April 1, 2012. At the time of her retirement, Plaintiff was 63 years old. Plaintiff "was a satisfactory or better employee with no reprimands or noted deficiencies through 2012." [Doc. 28 at ¶ 12]. At some point in 2007, Defendant Rhoda Coakley, Chaves County Clerk, appointed Defendant Douglas J. Shaw to the position of Deputy County Clerk, pursuant to which Shaw became the second most senior official in the County Clerk's Office, with full authority to administer both County and Clerk's Office policies. *Id*. at ¶ 13.

Taylor alleges that "Shaw quickly demonstrated he had little or no regard for the feelings or sensitivities of the female employees of the Chaves County Clerk's Office," and frequently "demeaned, insulted, threatened and harasse[d] Plaintiff and similarly situated female employees." *Id*. at ¶ 14. She avers that Shaw "referred to female deputy clerks as 'stupid, incompetent and thieves' and on occasion, characterized a female employee as 'dumber than a box of rocks,'" and that Shaw referred to Taylor and her female colleague Betty Spear as "two stupid women." *Id*. Taylor alleges that similarly situated male employees were not subject to such treatment. *Id*. Shaw's conduct created a hostile work environment at the Chaves County

2

Clerk's Office, such that a "perpetual sense of anxiety and emotional distress" existed among female employees. *Id*. at ¶ 15.

On December 16, 2009, both Taylor and Spear complained to the Chaves County Human Resource Director that the comments and treatment by Coakley and Shaw constituted unwarranted sexual harassment and should cease. *Id*. at ¶ 16. Defendants knew that Taylor had complained about them. *Id*. at ¶ 27. However, Taylor alleges that the illegal conduct continued and, in fact, increased after her complaint. *Id*. at ¶ 16-17. On March 10, 2010, the cash drawer in the Chaves County Clerk's Office was $9.00 short. Two days later, Shaw accused the staff of "having a thief in the office" and said that "at least one deputy clerk was incompetent." *Id*. at ¶ 17. When Taylor complained to Shaw privately regarding his conduct, he told her that "he had 'been in the Marines and had used two men to take out another marine and beat the hell out of him.'" *Id*. Believing this to be a veiled threat, Taylor became physically ill. *Id*. Taylor subsequently "complained on more than two additional occasions," (the complaint does not state to whom) including a complaint about an unspecified incident on May 26, 2011. *Id*. at ¶ 18.

In December of 2010 and December of 2011, after Taylor complained about Shaw to Human Resources, she was denied a Christmas bonus given to every deputy clerk except Taylor and Betty Spear, who had made similar complaints about Shaw. *Id*. at ¶ 20. The work environment deteriorated even further when Coakley admonished other employees not to associate with Taylor, and when on October 6, 2011, Taylor received "two unwarranted written reprimands" for incidents that occurred in August 2011 and September 12, 2011, respectively. *Id*. at ¶ 29. The Second Amended Complaint does not identify who reprimanded Plaintiff or otherwise set forth any details surrounding the reprimands. Taylor alleges that she "was constructively discharged by being forced to take early retirement in fear she would suffer

3

additional retaliation including termination." *Id*. at ¶ 39. According to Taylor, the work environment under Shaw at the Chaves County Clerk's Office was so "corrosive that Plaintiff's physical and mental health were causally affected requiring her to seek medical treatment." *Id*. at ¶ 30.

Taylor asserts claims for gender-based discrimination and retaliation under Title VII (Counts I and II), violation of the New Mexico Whistleblower Protection Act (Count III), and that the alleged sexual harassment and hostile work environment caused a violation of her constitutional right to equal protection (Count IV).

## LEGAL STANDARD

Rule 12(b)(6) provides in relevant part that a "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. When the Court reviews a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations of the complaint are accepted as true and viewed in a light most favorable to the nonmoving party. While factual assertions are taken as true, legal conclusions are not. To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

I.  **EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII**

  A. <u>Law Regarding Exhaustion</u>

Under Title VII, "exhaustion of administrative remedies is a prerequisite to suit." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012). Here, Taylor did file a charge of

discrimination with the Equal Employment Opportunity Commission (EEOC), but "a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. UPS, Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks and brackets omitted). Thus, to exhaust administrative remedies, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[, because] each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id*. (internal quotation marks omitted).

In *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003), the plaintiff filed a formal EEO complaint in July 1999 in which he complained about retaliatory treatment that allegedly occurred in May 1999. In the subsequent litigation in federal district court, however, the plaintiff sought to litigate additional retaliation claims pertaining to a September 2000 reprimand and his termination in April 2001. Because the plaintiff never filed formal EEO complaints regarding the latter incidents, the Tenth Circuit concluded that plaintiff had failed to exhaust his administrative remedies as to his additional retaliation claims.

**B. Analysis**

On October 11, 2011, Taylor filed a Charge of Discrimination with the New Mexico Department of Workforce Solutions, Human Rights Bureau. She alleged discrimination based on sex, age, and disability, as well as retaliation. *See* Doc. 18-1. The "particulars" of the illegal conduct that Taylor listed were:

> being subject to different terms and conditions of my employment due to my sex (female), age (62), and hearing disability by way of promotions, unprofessional behavior by using racial slurs, harassment and threats of being written up for termination; threats during certain conversations regarding diverse people by saying they 'need to be shot' or 'needing a new box of bullets.' I and others have

> complained about this hostile work environment and have been retaliated against
> several times. Nothing is done to correct this behavior by upper management.

*Id*. On October 26, 2011, the EEOC notified Chaves County of the charge and informed it that the "relevant period" was June 1, 2009 through June 3, 2011. On March 20, 2012, the EEOC issued a "right to sue" letter stating that it had been unable to make any determination as to Taylor's claims. The New Mexico Department of Workforce Solutions issued a similar letter on March 28, 2012.

Defendants argue that Taylor's claims for gender-based discrimination and retaliation under Title VII should be dismissed for failure to exhaust administrative remedies. The Court agrees. The record before the Court shows that in her administrative complaint, Taylor made allegations that do not overlap with those described in her Second Amended Complaint. In her administrative charge she complained of racial slurs, threats of being written up for termination, and threats relating to people needing to be shot. In contrast, the Second Amended Complaint alleges conduct that is entirely different, including complaints of disparaging comments regarding Taylor's gender and intelligence, accusations of theft, veiled comments relating to beating up Marines, unwarranted reprimands, and failure to give two Christmas bonuses. As the Tenth Circuit explained in *Jones*, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." 502 F.3d at 1186.

Relying on *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997), Taylor contends that the allegations in her Second Amended Complaint relate to a "continuing violation theory" such that acts of discrimination not considered by the EEOC are properly before this Court. Doc. 31 at 2. However, the continuing violation theory was abrogated by the Supreme Court in *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and by the Tenth Circuit in *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

Accordingly, the Court concludes that due to Taylor's failure to exhaust administrative remedies for the acts enumerated in the Second Amended Complaint, this Court lacks subject matter jurisdiction over her claims for gender discrimination and retaliation under Title VII. As such, Counts I and II of the Second Amended Complaint will be dismissed, and the Court need not reach Defendants' arguments regarding failure to state a claim under Rule 12(b)(6).

## II.  FAILURE TO STATE A CLAIM UNDER THE WHISTLEBLOWER PROTECTION ACT

In Count III of the Second Amended Complaint, Taylor asserts that Defendants violated her rights under the New Mexico Whistleblower Protection Act ("WPA"). That statute provides, in relevant part: "A public employer shall not take any retaliatory action against a public employee because the public employee: A. communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act . . . ." NMSA 1978, § 10-16C-3(A).

To that end, Taylor has alleged that she was a public employee, and that on December 16, 2009, she complained to the Human Resources Director for Chaves County regarding comments and treatment by Shaw (including his screaming at her and belittling her in front of her peers) that she regarded as illegal sexual harassment. Doc. 28 at ¶ 16. She alleges that the Human Resources Director stated that there was nothing she could do about Taylor's complaints because Coakley was an elected official. *Id*. Taylor further alleged that on March 10, 2010, she complained to Shaw regarding his conduct toward her and other women in the office, to no avail. *Id*. at ¶ 17. Finally, Taylor alleges that she and another female co-worker who also complained

7

about a hostile work environment were the only employees who were denied a discretionary bonus in December of 2010 and December of 2011, and that these acts were in retaliation for those complaints. *Id*. at ¶ 20. She also alleges that she was constructively discharged in retaliation for her complaints. *Id*. at ¶ 39.

Defendants argue that Taylor's allegations are not enough to state a claim under Rule 12(b)(6). The Court disagrees. As set forth above, Taylor has alleged that she was a public employee, and that she made specific complaints about Shaw's conduct on certain dates to the Human Resources Director and to Shaw himself. The reasonable inference from the allegations in the Second Amended Complaint is that she made her complaints in the good faith belief that Shaw's actions were unlawful or improper. Finally, she has alleged facts that, if true, would show that in retaliation for her complaints Defendants denied her bonus compensation and constructively discharged her. The Court concludes that Taylor's WPA claim has "facial plausibility" because the allegations in the Second Amended Complaint support "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009).

Defendants argue that Coakley, as the County Clerk, is an elected official and county officer, yet is not a "public employer" subject to liability within the meaning of the WPA. They contend that Coakley's duties are statutory, clerical, and ministerial, yet she lacks the autonomy and independence that characterize officers of public employers who are subject to liability under the WPA. They argue that the same reasoning applies to Coakley's subordinate, Shaw. The Court concludes that this determination is inappropriate on a motion to dismiss that is designed merely to test the sufficiency of the allegations in the Second Amended Complaint, and would require consideration of evidence outside the pleadings relating to the nature and scope of

the individual Defendants' job duties. Accordingly, the Court will deny this portion of the motion to dismiss.

Finally, the Court is somewhat confused by Defendants' reliance on *Martinez v. New Mexico State Eng'r Office*, 2000-NMCA-074, 129, N.M. 413, 419 (Ct. App. 2000) for the proposition that a public employee may pursue a retaliation claim solely through the EEOC or the New Mexico Human Rights Commission. *Martinez* does hold that the Personnel Board has no authority to adjudicate issues under the Americans With Disabilities Act or the New Mexico Human Rights Act. *Id*. Rather, the Personnel Board has the power to promulgate rules to carry out the provisions of the Personnel Act, to hear appeals by state employees aggrieved by an agency's action affecting their employment, and to determine whether the termination of a state employee's employment was supported by just cause. *Id*. at 418. *Martinez* simply does not provide that a public employee does not have a direct cause of action under the WPA.

The motion to dismiss Count III will be denied.

### III. FAILURE TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE

In Count IV, Taylor alleges that Defendants created a sexually hostile work environment that would not have occurred but for the Taylor's gender and was not directed at male deputy clerks. Doc. 28 at ¶ 45. She further alleges that Shaw's harassing conduct was either sanctioned or permitted by Chaves County and Coakley, who had actual knowledge of the harassment and failed to stop it. *Id*. at ¶ 46, 49. Finally, she alleges that the discriminatory conduct in question constitutes a custom or practice in that it is sufficiently persistent and widespread such that it constitutes a separate policy, practice, or custom. *Id*. at ¶ 48. Taylor's claim that a state actor discriminated against her on the basis of her gender, a quasi-supect class, subjects her claim to

intermediate scrutiny. *See Price–Cornelison v. Brooks*, 524 F.3d 1103, 1109–10 (10th Cir.2008). In their motion, Defendants argue that this claim should be dismissed under Rule 12(b)((6), as well as on the grounds of qualified immunity. The Court will address the former argument first.

### A. Failure to State a Claim

The Supreme Court has declared that individuals have a constitutional right under the Equal Protection Clause to be free from sex discrimination in public employment. *See Davis v. Passman*, 442 U.S. 228, 234–35 (1979). Defendants argue that Taylor has failed to plead specific facts showing that she was treated differently from males who were similarly situated, which "is essential to a viable equal protection claim." Doc. 30 at 14. They contend that because Taylor has not identified a comparator in her Second Amended Complaint, i.e., a male deputy clerk who was not subject to the same alleged treatment, she has not plausibly alleged that she was discriminated against based on her gender.

A plaintiff alleging disparate-treatment discrimination based on membership in a non-protected class or in a class of one must allege in the complaint that similarly situated persons were treated differently. *See Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) ("The pleading requirement of an allegation that a similarly situated person was treated differently applies both when the plaintiff challenges a government action that discriminates based on membership in a non-protected class, or membership in a 'class of one.' ") (internal citations omitted). The Tenth Circuit has noted: "'The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal alteration omitted) (quoting *Lauth v. McCollum*, 424 F.3d 631,

633 (7th Cir. 2005)).The Supreme Court has held, however, that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 607-08 (2008) (reasoning that "an allegation of arbitrary differential treatment could be made in nearly every instance" of a personnel decision by the government, and "government offices could not function if every employment decision became a constitutional matter"). *See Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008) ("[T]he class-of-one theory is not legally cognizable where . . . a public employee claims that she has been treated differently than other employees."). Showing disparate treatment of similarly situated individuals, while necessary for class-of-one claims and claims where the plaintiff is not a protected-class member, and while sufficient evidence of discrimination to meet the *McDonnell Douglas Corp. v. Green* class-based prima facie case, is not necessary for class-based equal protection claims. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169 1173 (10th Cir. 2005) (noting that the *McDonnell Douglas Corp. v. Green* class-based prima facie case requirement that the adverse action be taken in circumstances giving rise to an inference of discrimination "may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case"). Accordingly, it is also not necessary, for a plaintiff in a protected class pleading a class-based equal protection claim, to allege that similarly situated individuals were treated differently. Here, Taylor alleges that she was treated differently based on her membership in a quasi-protected class—female. Based on the foregoing authorities, the Court concludes that it is not necessary for Taylor, as the plaintiff in a class-based equal protection claim, to allege that similarly situated individuals were treated

differently. *See Hunt v. Central Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1190 (D.N.M. 2013) (Browning, J.). This portion of the motion to dismiss will be denied.

Defendants next argue that Taylor has failed to state an equal protection claim against Chaves County (and presumably against Coakley and Shaw in their official capacities[1]) because (1) there is no respondeat superior liability under § 1983, and (2) there can only be supervisory liability for a "defendant-supervisor who creates, promulgates, or implements a policy which subjects or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." Doc. 30 at 14 (quoting *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011)). It is correct that the doctrine of *respondeat superior* cannot be employed to hold governmental entities liable under § 1983 for the constitutional torts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). But a municipality can be liable when enforcement of its policies causes a constitutional deprivation. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, one way to establish a claim is to allege that enforcement of an express policy made by lawmakers causes a constitutional deprivation. Here, the Court agrees with Defendants that Taylor has failed to plead sufficient facts supporting the existence of a discriminatory policy or custom by Chaves County.

To establish liability of a local government entity, a plaintiff must allege facts to demonstrate that he suffered a constitutional deprivation resulting from an established policy, a longstanding practice or custom, or the conduct or decision of a final policymaker. *See, e.g.,*

---

[1] If a defendant is sued in his or her official capacity, the suit generally is treated as one against the entity that the official represents, and the plaintiff must allege facts to establish that such entity's policy or custom violated the plaintiff's federal rights. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

*Moss v. Kopp*, 559 F.3d 1155, 1168–69 (10th Cir. 2009). The allegations in the Second Amended Complaint simply do not rise to this level. Accordingly, the constitutional claim against Chaves County and the individual defendants in their official capacities will be dismissed.

### B. Qualified Immunity

#### 1. Legal Standard

When a defendant[2] raises qualified immunity in a Rule 12(b)(6) motion to dismiss, "the plaintiff must carry the burden of establishing that the defendant violated clearly established law." *Lybrook v. Members of Farmington Mun. Schools Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). The nature of the qualified immunity inquiry imposes a "heavy two-part burden" on the plaintiff. In order to defeat the qualified immunity defense, the plaintiff must both "demonstrate that the defendant's actions violated a constitutional or statutory right" and "show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (emphasis added). Federal judges are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For a right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quotation omitted). "A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). If the plaintiff fails to show

---

[2] The qualified immunity defense applies only to Defendants Coakley and Shaw in their individual capacities.

that a defendant's conduct violated a constitutional or statutory right, the court need not reach the additional question of whether the law was clearly established at the time of the challenged conduct. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

    2.    <u>Analysis</u>

The individual defendants, Coakley and Shaw, have raised the defense of qualified immunity [Doc. 30 at 15], which has triggered Taylor's burden to satisfied the two-pronged burden described above. Taylor has responded merely that it is clearly established that a public employer may not discriminate against employees on the basis of gender. *See* Doc. 31 at 10. That is true, insofar as it goes. What Taylor has failed to do, however, is demonstrate that her allegations demonstrate a clearly established violation of the equal protection clause. While Taylor has alleged that Shaw made insulting, boorish comments to and about female employees, she identified only two particular occasions on which this conduct took place. *See* Doc. 28 at ¶¶ 14, 17. Otherwise, she only vaguely alleges that Shaw "often" demeaned and insulted Taylor and other female employees. *Id.* at ¶ 14. She also alleges that Coakley admonished other employees not to associate with Taylor. *Id.* at 29. At issue here is whether these relatively bare allegations are enough to rise to the level of a constitutional violation. Taylor has not met her burden to show that they do, and therefore the Court concludes that Coakley and Shaw are entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint On the Basis of Qualified Immunity and Other Grounds* [Doc. 30] is **GRANTED IN PART** and **DENIED IN PART** as discussed herein. **IT IS FURTHER**

**ORDERED** that Counts I, II, and IV of Plaintiff's Second Amended Compliant are hereby **DISMISSED**.

                                                  **UNITED STATES DISTRICT JUDGE**